UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LUMENATE TECHNOLOGIES, LP, | : | Case No. 1:14-cv-125 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| DANIEL BAKER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS (Doc. 20)**

This civil action is before the Court on Defendants' partial motion to dismiss (Doc. 20) and the parties' responsive memoranda (Docs. 24, 25).[1]

## I.     FACTS AS ALLEGED BY THE PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to the Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Defendants Baker, Anderson, and Hahn were long-time employees of Data Processing Sciences Corporation ("DPS"), which provided managed IT services to third parties. (Doc. 1 at ¶¶ 10-12). As senior and trusted employees, Defendants were intimately familiar with DPS and its customers and operations. (*Id*. at ¶ 14). They had access to DPS's confidential, proprietary information and trade secrets concerning DPS's customers, customer buying habits, volume, needs, and other specific DPS data. (*Id*.)

---

[1] Defendants include Daniel Baker, Christopher Anderson, William Hahn, and RDI Marketing Services, Inc.

Defendants had full access to DPS's strategy for soliciting, securing, servicing, and retaining customers, particularly with regard to DPS's highly specialized healthcare managed services group. (*Id.*) Accordingly, as a condition of their employment with DPS, each Defendant signed a DPS Agreement, promising not to disclose DPS's confidential information, directly or indirectly compete with DPS, or otherwise solicit or divert business from DPS's customers or accounts. (*Id.* at ¶¶ 15-16, Exs. A-C). As part of their DPS Agreements, Defendants acknowledged that any breach of the agreements would result in irreparable harm to DPS. (*Id.* at ¶ 17).

On July 31, 2013, Lumenate purchased substantially all of the assets of DPS pursuant to the Asset Purchase Agreement ("APA"). (Doc. 1 at ¶ 19). Under the terms of the APA, DPS assigned all of its employee Non-Solicitation and Non-Disclosure Agreements to Lumenate. (Doc. 1 at ¶ 20; APA § 5.4(a)). After Lumenate purchased DPS's assets, Baker, Anderson, and Hahn resigned, and unbeknownst to Lumenate, established a managed services business for Defendant RDI Marketing Services, Inc. ("RDI"). (Doc. 1 at ¶ 37). During exit interviews, Defendants were reminded of their obligations under their DPS Agreements. (*Id.* at ¶ 36). Neither Baker, Anderson, nor Hahn, disclosed the fact that they were going to RDI to compete against Lumenate. (*Id.*) In fact, Baker represented that he had accepted a sales position at a software company he refused to name. (*Id.*)

As soon as they arrived at RDI, Baker, Anderson, and Hahn began soliciting customers for whom they had worked when they were employed by Lumenate/DPS.

2

(Doc. 1 at ¶ 25).  Indeed, Baker admits that his solicitation began almost a month *before* he actually resigned his position at Lumenate, and allegedly continued even after the Court enjoined such solicitation on February 23, 2014.  (Doc. 1 at ¶ 26; Baker Dep. at 49-51).  Anderson admits that he took the contents of his Lumenate computer, which he used to service former Lumenate customers until after this litigation was filed.  (Doc. 1 at ¶¶ 37-38; Anderson Dep. at 30-34).  As a result of Defendants' allegedly wrongful conduct, RDI acquired a profitable managed services business in a matter of months, servicing former Lumenate customers, and using Lumenate's trade secrets and former employees.  (Doc. 1 at ¶ 25).  Plaintiff claims that all of RDI's managed services customers were stolen from Lumenate.  (Doc. 1 at ¶ 24; Hahn Dep. at 16).

Defendants move to dismiss Count III of the complaint for breach of the non-compete agreements.  (Doc. 1 at ¶¶ 67-77).

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. (*citing* Fed. Rule Civ. Proc. 8(a)(2)).

### III. ANALYSIS

Defendants maintain that: (1) under the express terms of the APA, DPS did not assign Defendants' DPS Agreements to Lumenate; and (2) even if DPS attempted such an assignment, Ohio law does not permit Lumenate to enforce the DPS Agreements

against Defendants. Accordingly, Defendants argue that Plaintiff cannot state a breach of contract claim based on the DPS Agreements with Baker, Hahn, and Anderson.

### A. Assignment

In the complaint, Plaintiff clearly alleges that the Defendants' DPS Agreements were assigned from DPS to Lumenate under the APA. (Doc. 1 at ¶¶ 14-21, 67, 77).

The DPS Agreements state that the Employee shall not:

> [H]ire any person or solicit or encourage any person to leave the employ of DPS who is then employed by DPS; or contact any person or entity who/which Employee contacted on behalf of DPS while employed by DPS for the purpose of providing any products or services which are comparable to or competitive with any products or services which are now or are hereafter provided by DPS.

(Doc. 1, Exs. A-C §§ 1-2). Plaintiff maintains that such obligations are expressly contemplated by the "Non-Disclosure and Non-Solicitation" language used in the APA.

Defendants premise their arguments on the following language from Section 5.4(a) of the APA: "[a]s part of the Assigned Contracts, with respect to each Transferred Employee and each Non-Accepting Employee who has in place a Non-Solicitation and Non-Disclosure Agreement (a "NDA"), Seller will assign such NDA to Buyer." Defendants claim that the "Non-Solicitation and Non-Disclosure Agreement" described in the APA is not a reference to the DPS Agreements which are called "Non-Disclosure and Non-Competition" agreements. Defendants argue that the use of the term "Non-Solicitation" instead of "Non-Competition" to describe the DPS employees' restrictive

5

covenants nullifies the assignment of the employment obligations of key DPS employees.[2]

Defendants' argument emphasizes the APA's headings and titles and ignores the substantive obligations imposed by the assigned DPS Agreements, as well as the fact that both documents reference "Non-Disclosure" agreements. "Section headings in a contract are not binding provisions[,] [t]hey merely guide the reader to certain provisions." *Jordan v. Marion Technical College*, No. 9-90-36, 1991 Ohio App. LEXIS 3966 at *5 (Ohio App. Aug. 15, 1991).

Upon review of the plain language of the APA, the Court finds that it is not clear and unambiguous that the APA excluded the assignment of the DPS Agreements.

### 1. *Absurd Result*

"Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Foster Wheeler Enviresponse v. Franklin Cty. Conv. Fac. Auth.*, 678 N.E.2d 519, 526 (Ohio 1997). If the Court were to construe the contract as Defendants argue, Plaintiff would have purchased a services business without negotiating any protection for the acquired assets (*i.e.*, trade secrets, customer relationships, and key employee contracts). Here, no DPS employee had an employment agreement titled "Non-Solicitation and Non-Disclosure Agreement,"

---

[2] At this stage in the litigation, Defendants have the burden to prove that the APA is "clear and unambiguous" in its purported exclusion of assigning the DPS Agreements. *Alexander v. Buckeye Pipeline Co.*, 374 N.E.2d 146, 150 (Ohio 1978).

as referenced in the APA. Therefore, if the Court accepted Defendants' argument, the APA would assign contracts that do not exist (specifically, the "Non-Competition Agreement"). Accordingly, the Court finds that Defendants' reading of the APA would produce an absurd result.

### 2. Whether Assignment was Contemplated

Next, Defendants argue that the DPS Agreements are not assignable because they refer to "DPS" rather than "Employer," and because they reference specific places where DPS had offices. Defendants contend that these facts demonstrate that assignment was not contemplated by the parties.

In making this argument, Defendants rely on *Fitness Experience v. TFC Fitness Equipment, Inc.*, 355 F.Supp.2d 889 (N.D. Ohio 2004), where the relevant non-compete agreement identified both the employer and employee by name. *Id.* at 897 ("the non-compete agreement specifically applies to Exercare [the employer] and each individual defendant rather than referring generically to their respective roles as employer and employee"). Here, in contrast, the DPS Agreement only refers to "DPS" by name. (Doc. 1, Exs. A-C (referring generally to "Employee" rather than repeatedly identifying employees by name)). Defendants cannot have it both ways – if the use of "DPS" evidences intent of non-assignability, then the use of "Employee" evidences intent of assignability.

Defendants also argue that the nature of the geographic restrictions in the DPS Agreements indicate that they are not assignable (citing the non-compete agreement in

*Fitness Experience*, 355 F.Supp.2d at 889, which was defined by a reference to the distance from one specific employer site). However, under the DPS Agreements, the "Territories" restrict only the places where Defendants are prohibited from owning, operating, or being in the employ of a competitor of DPS. The non-disclosure provisions and provisions prohibiting the solicitation of customers and employees are general and are not limited to the Territories. (Doc. 1, Exs. A-C at §§ 1-2). Furthermore, the definition of "Territories" in the DPS Agreements specifically contemplates future expansion. (*Id.* ("…said cities and all other cities in which DPS may hereafter have an office herein referred to as the "Territories.")). The DPS Agreements do not put limitations on the type of office expansion (*i.e.*, whether DPS acquired or was acquired by another company with new offices). Therefore, there is nothing about the geographic restrictions in the DPS Agreements that suggests the signers did not intend them to be assignable.

### 3. *Goodwill*

Finally, Defendants argue that Plaintiff fails to allege facts demonstrating that the assignability of the DPS Agreements was "necessary to protect the good will of the business being sold." *Fitness Experience*, 355 F.Supp.2d at 889.[3]

The complaint states that Defendants were subject to the DPS Agreement (Doc. 1 at ¶¶15-17, 67-68), that Plaintiff performed its obligations under those

---

[3] Again, it is important to note that Defendants rely on *Fitness Experience*, an opinion which resolved a *motion for summary judgment*, not a motion to dismiss.

8

agreements (*Id.* at ¶ 69), that Defendants breached the DPS Agreements (*Id.* at ¶¶ 70-74), and that Defendants' breaches caused damages (*Id*. at ¶¶ 76-77). The DPS Agreements specifically state that the "Employee acknowledges that such confidential information is a valuable commercial asset of DPS, that its use provides DPS with a significant competitive advantage and that the retention by DPS of its customers is vital and indispensable to the conduct of its business." (Doc. 1 at Exs. A-C). The Complaint describes Plaintiff's managed services business, Defendants' trusted positions, the valuable proprietary information possessed by Defendants, and how Defendants used that information to steal millions of dollars in customer business. (*Id.* at ¶¶ 10, 12-14, 18, 37, 42-47). Accordingly, Plaintiff has presented sufficient facts that the DPS Agreements were necessary to protect the goodwill of the business.[4]

### D. Ohio Contract Law

Even if the Court were inclined to read the APA as assigning Defendants' DPS Agreements to Plaintiff, Defendants argue that such an assignment would have no effect under Ohio law.

The parties dispute whether non-compete agreements are assignable under Ohio law. When a non-compete agreement is silent as to assignability, the court must ascertain the parties' intent by determining: (1) whether the covenant employs words which

---

[4] *Fitness Experience*, 355 F.Supp.2d at 890 ("the importance of non-compete agreements to the protection of the good will of the business sold operates on a spectrum. At one extreme, where assignable non-compete agreements are fundamentally necessary to the continued operation of the business, are businesses which perform unique services and are highly dependent on a few key clients.").

indicate that assignment was contemplated; and (2) whether assignability is necessary to protect goodwill of a business being sold.  *Fitness Experience*, 355 F. Supp.2d at 889 ("the assignment of the Individual Defendants' non-compete agreements is not categorically precluded even though the agreements did not explicitly state that they were assignable and even though the Individual Defendants did not expressly consent to the assignment").[5]  *See also Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 786 N.E.2d 914, 919 (Ohio App. 2003) ("Appellant correctly states that non-competition agreements are assignable in Ohio[.]").

While the Court finds that Plaintiff has alleged sufficient facts to go forward on the claims that: (1) assignment was contemplated; and (2) assignability is necessary to protect the goodwill of the Company --  where the relevant analysis is a factual inquiry into the parties' intent, the Court declines to making a finding on the parties' intent at the motion to dismiss stage.

### IV.   CONCLUSION

Accordingly, for these reasons, Defendants' partial motion to dismiss (Doc. 20) is **DENIED**.

   **IT IS SO ORDERED**.

Date:  4/25/14                                                                                   *s/ Timothy S. Black*
                                                                                                           Timothy S. Black
                                                                                                           United States District Judge

---

[5] The Court finds that Defendants' repeated references to *Fitness Experience* are misplaced because that case arose in the context of a motion for summary judgment.

10